UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BASANT SIDHU, SANJESH SINGH,

       Plaintiffs,

    v.

SHERIFF'S DEPUTY S. GARCIA,
SHERIFF'S DEPUTY AUTRY,
SHERIFF'S DEPUTY COLLINS,
STACEY SINGH, aka STACEY KAUR,
SUNDAR BAINS,

       Defendants.

_____/

NO. CIV. S-09-1090 LKK/DAD

O R D E R

This case concerns the search of plaintiffs' home by sheriff deputies following a welfare check. For the reasons described below, the court grants summary judgment in favor of the sheriff deputies and denies plaintiffs' motions for summary judgment.

**I. BACKGROUND**

**A.    Factual Background.**

Plaintiff Sanjesh Singh ("Singh") and defendant Stacey Kaur ("Kaur") met and married in Fiji in a arranged marriage in April 2007. Dep. of Sanjesh Singh ("Singh Dep.") at 8:13-21. Kaur

1

remained in Fiji until April 2008, when she moved to Vacaville, California to live with Singh and his family, including his mother plaintiff Basant Sidhu ("Sidhu"). Singh Dep. at 18:22-19:02, 38:08-14. Plaintiffs' home is in a rural area with no nearby bus stops or grocery stores. Singh Dep. at 57:03, 57:17-23. Kaur was not licensed to drive. Decl. of Stacey Kaur ("Kaur Decl.") ¶ 5.[1]

Sidhu then contacted Sheriff Deputy defendant Seth Garcia ("Garcia") of the Solano County Sheriff's Department on June 22, 2008 to report that she was receiving harassing calls from Kaur's uncle, defendant Sundhar Bains ("Bains"). Dep. of Seth Garcia ("Garcia Dep.") at 23:17-24:03. Sidhu had actually only received one concerned call from defendant Bains regarding Kaur's well-being. Dep. of Basant Sidhu ("Sidhu Dep.") at 106:05-111:05. Garcia asked to speak with Kaur during the June 22 call for Sidhu, and did hear Kaur say that she was fine and that she wanted to be left alone. Garcia Dep. at 40:17-41:13, 44:02-23.

Bains was concerned with Kaur's safety and well-being, and wanted to see Kaur at plaintiffs' house. Sidhu Dep. at 106:05-109:06. Bains informed Sheriff Deputy Garcia stating that he was concerned about Kaur, and had a large number of worrisome emails

---

[1] Plaintiffs move to strike this declaration because Kaur did not appear for her deposition. The Sheriff Deputy defendants argue that plaintiffs did not move to compel or to amend the scheduling order to obtain Kaur's testimony. Further, Kaur is not represented by counsel, including counsel for the Sheriff Deputy defendants. The Sheriff Deputy defendants state that they merely contacted her to obtain a declaration. The court finds that the declaration may be considered in these motions because plaintiffs did not diligently pursue Kaur's testimony and because Kaur is not a party to these motions.

1  from Kaur. Garcia Dep. at 49:19-51:13, 52:07-53:03, 58:19-59:15,
2  60:13-61:25. Bains never mentioned that there was an exigency or
3  emergency when speaking to Garcia. Garcia Dep. at 46:10-25, 47:01-
4  13. In the emails Garcia received from Bains, Kaur wrote that she
5  was contemplating suicide and needed help. Garcia Dep. at 12:08-
6  14:12, 66:01-24. In addition, Kaur stated in these emails that she
7  was not allowed to contact anyone by email and that her calls were
8  being monitored. Garcia Dep. at 12:08-13:20. Further, Kaur wrote
9  that she was in fear of physical violence from Sidhu. Garcia Dep.
10 at 12:08-13:20. In the emails, Kaur also indicated that she
11 believed it was the right time for her to call the police for help.
12 Garcia Dep. at 12:08-13:20.

13    On the morning of June 24, 2008 Sheriff Deputy defendants
14 Garcia and Denton Autry ("Autry") visited plaintiffs' and Kaur's
15 house to conduct a "knock and talk" welfare check on Kaur. Garcia
16 Dep. at 84:06-18, 98:03-16; Dep. of Denton Autry ("Autry Dep.") at
17 35:03-17, 63:04-10. Autry saw someone look out the window and
18 movement in the house as he and Garcia arrived at the home. Autry
19 Dep. at 63:22-64:17. Garcia knocked at the door and rang the
20 doorbell for several minutes but received no response. Garcia Dep.
21 at 101:5-12; Kaur Decl. ¶ 7. At Garcia and Autry's request, the
22 sheriff dispatcher placed a phone call to home. They heard the
23 phone ring, but there was no answer. Garcia Dep. at 103:18-105:06;
24 Kaur Decl. ¶ 7. Kaur and an elderly woman called "Grandma" or
25 "Granny" were inside the home but did not answer the door or the
26 call. Garcia Dep. at 101:05-12, 126:19-21, 127:11-23; Kaur Decl.

¶ 7. Kaur was told by Granny that they should hide and not answer the door. Kaur Decl. ¶ 7. Defendants Garcia and Autry checked the perimeter of the residence but could not gain any information because the windows were all covered. Garcia Dep. at 107:04-06, 108:13-16, Autry Dep. at 64:02-03.

Garcia and Autry testified that they believed the Kaur's safety might be at risk because someone was obviously in the home but not responding and because of Kaur's emails discussing suicidal thoughts and threats of physical violence. Garcia Dep. at 113:17-24, 114:05-115:10; Autry Dep. at 71:21-73:03. Thus, they concluded that emergency circumstances existed for a search. Sheriff Deputy Autry located an open door in the rear of the house. Autry Dep. p. 113:13-14. The parties dispute who left this door open. The Sheriff Deputy defendants contend that Kaur, seeing the officers arrive and wanting their help, made sure to leave this door open so that they could enter the home. Kaur Decl. ¶ 7; Decl. of Seth Garcia ("Garcia Decl.") at 117:09-13, 162:09-163:01. Plaintiffs, however, offer evidence that Kaur did not know how the door was opened and testimony that it was Singh who left thr door open. Decl. of Sanjesh Singh ("Singh Decl.") ¶ 19; Ex. H at 105-08, 120-23.

Sheriff Deputy defendant Craig Collins ("Collins") arrived at the home after Garcia and Autry and upon his arrival provided backup to Garcia and Autry while they searched the house. Dep. of Craig Collins ("Collins Dep.") at 28:05-29, 54:17-25. Autry and Garcia then entered through the open door and repeatedly identified themselves as from the Sheriff's Department. Autry Dep. at 113:13-

4

14; Garcia Dep. at 117:18-118:04. Autry and Garcia conducted a search of the home limited to looking anywhere where there could have been a body. Autry Dep. at 98:05-17, 125:05-126:20; Garcia Dep. at 123:04-18, 124:05-125:24. Sheriff Deputies Autry, Collins, and Garcia testified that they did not enter the home to search for evidence of a crime. Autry Dep. at 78:21-79:01; Collins Dep. at 69:17-70:18; and Garcia Dep. at 102:18-103:03. The Sheriff Deputies located the only occupants of the home, Kaur and Grandma, crouched on the floor in an upstairs bedroom. Autry Dep. at 123:17-124:04; Garcia Dep. at 126:19-23, 127:06-128:21, 131:01-05. Singh arrived after the search had concluded and while Garcia was speaking with Kaur. Garcia Dep. at 134:16-21; Singh Dep. at 84:23-85:13, 86:21-25; Kaur Decl. ¶ 9.

### B. Procedural History

On June 9, 2010, plaintiffs filed a motion for partial summary judgment as to all claims brought against the Sheriff Deputy defendants. On June 28, 2010, the Sheriff Deputy defendants moved for summary judgment on all claims brought against them. On July 12, 2010, plaintiffs filed a cross-motion for partial summary judgment along with their opposition to the Sheriff Deputy defendants motion. This cross-motion only address the issue of whether Kaur impliedly consented to the search of the house. All motions are set to be heard on July 26, 2010.

### II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine

1  issue as to any material fact. Such circumstances entitle the

2  moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

3  see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

4  Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

5  summary judgment practice, the moving party

6      always bears the initial responsibility of informing the
       district court of the basis for its motion, and

7      identifying those portions of "the pleadings,
       depositions, answers to interrogatories, and admissions

8      on file, together with the affidavits, if any," which it
       believes demonstrate the absence of a genuine issue of

9      material fact.

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

11  R. Civ. P. 56(c)).

12      If the moving party meets its initial responsibility, the

13  burden then shifts to the opposing party to establish the existence

14  of a genuine issue of material fact. Matsushita Elec. Indus. Co.

15  v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First

16  Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

17  (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party

18  may not rely upon the denials of its pleadings, but must tender

19  evidence of specific facts in the form of affidavits and/or other

20  admissible materials in support of its contention that the dispute

21  exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.

22  at 289. In evaluating the evidence, the court draws all reasonable

23  inferences from the facts before it in favor of the opposing party.

24  Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,

25  Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme

26  v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

1  Nevertheless, it is the opposing party's obligation to produce a

2  factual predicate as a basis for such inferences. See Richards v.

3  Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The

4  opposing party "must do more than simply show that there is some

5  metaphysical doubt as to the material facts . . . . Where the

6  record taken as a whole could not lead a rational trier of fact to

7  find for the nonmoving party, there is no 'genuine issue for

8  trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

9                              **III. ANALYSIS**

10      **A.    Fourth Amendment Search and Seizure.**

11      Plaintiffs contend that the Sheriff Deputy defendants, Garcia,

12  Autry, and Collins, have violated their Fourth Amendment rights to

13  be free from unreasonable search and seizure by entering their

14  residence without a search warrant and without a valid exception

15  to the search warrant requirement.[2]

16          **1.   The Emergency Exception to the Warrant Requirement.**

17
       One well-established exception to the search warrant
18
   requirement of the Fourth Amendment is the case of an emergency.
19
   In Brigham City v. Stuart, The United States Supreme Court held,
20
   "One exigency obviating the requirement of a warrant is the need
21
   to assist persons who are seriously injured or threatened with such
22
   injury." Brigham City v. Stuart, 547 U.S. 398, 403 (2006)(internal
23

24  ───────────
25      [2] Both parties have also moved for summary judgment on the
    issue of implied consent. Because the court grants the defendants'
26  motion pursuant the emergency doctrine, the court does not consider
    the issue of implied consent.

                                    7

1    citations omitted). The Court reasoned that "'the need to protect
2    or preserve life or avoid serious injury is justification for what
3    would be otherwise illegal absent an exigency or emergency.'" Id.
4    (quoting Mincey v. Arizona, 437 U.S. 385, 393-94 (1978); see also
5    U.S. v. Snipe, 515 F.3d 947, 950-51 (9th Cir. 2008). In Brigham,
6    the Court held that it was objectively reasonable for a police
7    officer to enter a home without a warrant to render aid to the
8    injured, and to protect against further harm, when he witnessed a
9    fight taking place in the home through the back window. Id. at 406.

10        While the Supreme Court precedent could suggest that exigent
11   circumstances and the emergency doctrine are part of a single
12   exception, the Ninth Circuit has held otherwise. Hopkins v.
13   Bonvicino, 573 F.3d 752, 763 (9th Cir. 2009). Specifically, the
14   court held that, "the 'emergency' exception stems from the police
15   officers' 'community caretaking function' . . . . [T]his exception
16   does 'not [derive from] police officers' function as criminal
17   investigators," and therefore probable cause is irrelevant. Id.
18   (quoting U.S. v. Cervantes, 219 F.3d 882, 889 (9th Cir. 2000)); see
19   also U.S. v. Snipe, 515 F.3d 947, 952 (9th Cir. 2008). Thus, in
20   Hopkins, the Circuit held that exigent circumstances and the
21   emergency doctrine were two separate exceptions to the warrant
22   requirement with different tests.

23        The emergency doctrine applies when "(1) law enforcement had
24   an objectively reasonable basis for concluding that there was
25   immediate need to protect others or themselves from serious harm;
26   and (2) the search's scope and manner were reasonable to meet the

1  need." Snipe, 515 F.3d at 952; see also Brighamm City, 547 U.S. at

2  404; Hopkins, 573 F.3d at 764. In Snipe, the Court of Appeals held

3  that officers were objectively reasonable in believing there was

4  an emergency where they received a call from a hysterical man

5  saying "[g]et the police over here now." Id. at 953. In addition,

6  Snipe held that the officers' manner of entry was reasonable

7  because they knocked and announced themselves and only conducted

8  a search of areas where people were likely to be injured. Id. This

9  objective reasonableness test is determined from the totality of

10 the circumstances. Hopkins, 573 F.3d at 764 (quoting U.S. v.

11 Stafford, 416 F.3d 1068, 1074 (9th Cir. 2005)).

12 **2.   Application of the Emergency Doctrine to the**
   **Instant Case.**

13

14 The Sheriff Deputy defendants move for summary judgment on

15 plaintiffs' Fourth Amendment claim. They argue that the evidence

16 shows that it was objectively reasonable for them to believe there

17 was an emergency. Further, defendants claim that their method of

18 entry and scope of search of the home were reasonable, and thus

19 they had a valid exception to the warrant requirement. In support

20 of this contention, defendants provide the following evidence:

21 (1) Df. Sep. SUF 6

22 Testimony of Garcia that Sidhu initiated contact with the

23 Sheriff Department to report she was receiving harassing calls from

24 Bains about Kaur. Garcia Dep. at 23:17-24:03.

25 (2) Df. Sep. SUF 6

26 Testimony of Sidhu that she had actually only received one

1  concerned call from Bains regarding Kaur's well-being. Sidhu Dep.

2  at 106:05-111:05.

3      (3) Df. Sep. SUF 7

4      Testimony of Sidhu that Bains was concerned with Kaur's safety

5  and well-being, and wanted to come to Sidhu's home to check on

6  Kaur. Sidhu Dep. at 106:05-109:06.

7      (4) Df. Sep. SUF 13

8      Testimony of Garcia that Bains contacted him stating that he

9  was concerned about Kaur and had a large amount of emails from Kaur

10 that concerned him. Garcia Dep. at 49:19-51:13, 52:07-53:03, 58:19-

11 59:15, 60:13-61:25.

12     (5) Df. Sep. SUF 14

13     Testimony of Garcia that in the emails he received from Bains,

14 Kaur mentioned contemplating suicide and needing help. Garcia Dep.

15 at 1208-14:12, 66:01-24, Ex. 5 at 1, 7, 18, 24, 26, 14.

16     (6) Df. Sep. SUF 15

17     Garcia received emails from Bains written by Kaur stating that

18 she was not allowed to contact anyone by email and that her calls

19 were being monitored. Garcia Dep. at 12:08-13:20, and Ex. 5 at 5,

20 6, and 18.

21     (7) Df. Sep. SUF 16

22     Kaur stated in one of her emails that she feared physical

23 violence from Sidhu. Garcia Dep. at 12:08-13:20, and Ex. 5 at 12.

24     (8) Df. Sep. SUF 17

25     In the emails received by Garcia, Kaur states that she needs

26 help and that now is the right time to call the police for help.

1 Garcia Dep. at 12:08-13:20, and Ex. 5 at 7.

2     (9) Df. Sep. SUF 23

3     Testimony of Autry that as he and Garcia arrived at the home,

4 he saw someone look at the window and saw movement in the house.

5 Autry Dep. at 63:22-64:17.

6     (10) Df. Sep. SUF 24

7     Testimony of Garcia that when he knocked on the door and rang

8 the doorbell for several minutes, there was no response. Garcia

9 Dep. at 101:5-12.

10     (11) Df. Sep. SUF 25

11     Testimony of Garcia that, the sheriff dispatch placed a phone

12 call to the residence at the request of the officers. The officers

13 heard the phone ring, but no one answered the call. Garcia Dep. at

14 103:18-105:06.

15     (12) Df. Sep. SUF 30

16     Testimony of Garcia and Autry that they checked the perimeter

17 of the residence, but could not gain any information because the

18 windows were all covered. Garcia Dep. at 107:04-06, 108:13-16, and

19 Autry Dep. at 64:02-03.

20     (13) Df. Sep. SUF 31

21     Testimony of Autry that he located an open door in the rear

22 of the house. Autry Dep. at 113:13-14.

23     (14) Df. Sep. SUF 32

24     Testimony of Autry and Garcia that they entered through the

25 open door and repeatedly identified themselves as present and from

26 the sheriff's department. Autry Dep. at 113:13-14, and Garcia Dep.

11

at 117:18-118:04.

(15) Df. Sep. SUF 33

Testimony of Autry and Garcia that they conducted a search of the home that was limited to looking anywhere they could find a body. Autry Dep. at 98:05-17, 125:05-126:20, Garcia Dep. at 123:04-18, 124:05-125:24.

(16) Df. Sep. SUF 48

Testimony of Autry, Collins, and Garcia that they did not enter the home to search for evidence of a crime. Autry Dep. at 78:21-79:01, Collins Dep. at 69:17-70:18, and Garcia Dep. at 102:18-103:03.

Plaintiffs oppose this motion, based largely on defendants' own testimony. Plaintiffs argue that the defendants' testimony does not create a circumstance under which it would be objectively reasonable for them to believe there was an emergency, and therefore an exception to the warrant requirement. In addition to the facts stated above, plaintiffs support this contention with the following evidence:

(1) Decl. of Herman Franck ("Franck Decl."), Ex. C.

Testimony of Garcia that the officers waited an entire day after receiving the emails to do their welfare check on Kaur. Garcia Dep. at 88:18-25, 89:01-05.

(2) Franck Decl., Ex. C.

Testimony of Garcia that Bains never at any time mentioned there was an exigency or emergency when speaking to the officers. Garcia Dep. at 46:10-25, 47:01-13.

1    The court finds that no reasonable jury could conclude that

2    the defendants' determination of an emergency, as that term is

3    understood under Fourth Amendment caselaw, was objectively

4    unreasonable. The Sheriff Deputies had received evidence that Kaur

5    may have been held against her will and in danger of harm from

6    herself or others at any moment. The emails, coupled with Sidhu's

7    overzealous claim of harassing phone calls and insistence that Kaur

8    was well to Garcia, created a reasonable concern to the officers

9    that might warrant a welfare check, within their "community

10   caretaking function."

11   Moreover, the Sheriff Deputies only contend that the emergency

12   arose when they reached the home, not before. Specifically, the

13   emergency arose only after they were aware (1) that there was at

14   least one person in the home when they arrived (2) that a person

15   in the house saw the officers, and (3) that there was no response

16   to either their knocks at the door or the call placed by dispatch.

17   This, in conjunction with the fact that Kaur may have been in

18   danger from herself or others and that she may have been held

19   against her will, makes it objectively reasonable for the Sheriff

20   Deputies to believe that Kaur was in imminent danger. Thus, the

21   emergency exception to the warrant requirement applied. The Sheriff

22   Deputies did not enter the home seeking evidence of a crime, but

23   rather entered pursuant their community caretaking function under

24   objectively reasonable belief of a need to protect Kaur from harm.

25   The additional facts and disputes that plaintiffs raise are

26   immaterial. Because the Sheriff Deputies do not claim that the

1   emergency arose prior to their visit to the home, it is of no
2   effect that they waited an entire day to conduct the welfare check
3   or that Bains did not previously characterize the situation as an
4   emergency.

5       Further, a reasonable jury could not find the manner in which
6   the Sheriff Deputies entered the home to be unreasonable, as that
7   term is understood in Fourth Amendment case law. The Sheriff
8   Deputies entered through an open door in the rear of the home. Upon
9   entry, they repeatedly called into the home to identify themselves.
10  Moreover, the only evidence submitted by the parties indicates that
11  the Sheriff Deputies' search was limited only to places where a
12  body might have been found, which is reasonably within the scope
13  of the purpose for the search: to locate Kaur and verify her well-
14  being. Thus, defendants motion for summary judgment is granted as
15  to plaintiffs' first claim for violation of the Fourth Amendment.

16      **B.   Trespass.**

17      Plaintiffs allege that the defendants' entry into their home
18  constitutes the common law tort of trespass. It is well established
19  that the "essence of the cause of action for trespass is an
20  'unauthorized entry' onto the land of another." <u>Miller v. Nat'l</u>
21  <u>Broadcasting Co.</u>, 187 Cal. App. 3d 1463, 1480 (1986).

22      However, the California Supreme Court has recognized that
23  "necessity often justifies an action which would otherwise
24  constitute a trespass, as where the act is prompted by the motive
25  of preserving life . . . and reasonably appears to the actor to be
26  necessary for that purpose." <u>People v. Roberts</u>, 47 Cal. 2d 374, 378

14

1   (1956); see People v. Ammons, 103 Cal. App. 3d 20, 31 (1980).

2   Roberts upheld the trial court's conclusion that police officers

3   did not trespass when they entered an apartment without a warrant

4   because they reasonably believed someone was in distress, having

5   heard moans coming from the apartment. Id. at 378.

6       As noted above, it was objectively reasonable for the

7   Sheriff Deputies to believe that there was an emergency and that

8   they needed to enter the home to protect Kaur from serious harm.

9   Since it is well-established in California that such an entry

10  does not constitute a trespass, the Sheriff Deputies' motion for

11  summary judgment is granted as to plaintiffs' trespass claim.

12      **C.   Right to Privacy.**

13      Plaintiffs allege that defendant officers' entry into their

14  home constitutes a violation of the Right to Privacy under

15  California Constitution Art. I Section 1. In California, the

16  violation of the right to privacy is an actionable tort.

17  Motschenbacher v. R.J. Reynolds Tabacco Co., 498 F.2d 821, 823-

18  24 (9th Cir. 1974). Art. I § 1 creates a right of action against

19  private as well as government entities. Hill v. Nat'l Collegiate

20  Athletic Assn., 7 Cal. 4th 1, 20 (1994). In California, to

21  sustain an action for common law invasion of privacy, plaintiffs

22  must prove: "(1) intrusion into a private place, conversation or

23  matter, (2) in a manner highly offensive to a reasonable

24  person." Shulman v. Group W Productions, Inc., 18 Cal. 4th 200,

25  231 (1998); see Miller, 187 Cal. App. 3d at 1482. Further, "in

26  determining the 'offensiveness' of an invasion of a privacy

interest, common law courts consider, among other things: 'the degree of the intrusion, the context, conduct and the circumstances surrounding the intrusion as well as the intruders' motives and objectives." Hill, 7 Cal. 4th at 26 (quoting Miller, 187 Cal. App. 3d at 1483-84). In Shulman, the California Supreme Court reversed an award of summary for the defendant television producers, holding that there were triable issues of fact as to whether defendants invaded plaintiff's privacy when they accompanied her in a medical rescue helicopter after an accident and videotaped plaintiff and her care without consent. Shulman, 18 Cal. 4th at 242.

In this case, plaintiffs base their invasion of privacy claim on the Sheriff Deputies' entry into plaintiffs' home without a warrant and their ensuing search for Kaur. Further, plaintiffs rely primarily on the Sheriff Deputies' own testimony to support their claim. However, plaintiffs have alleged no facts to support the allegation that this entry and search occurred in a manner which is highly offensive to a reasonable person. As described above, this court finds that Sheriff Deputies were objectively reasonable in believing that there was an emergency exception to the warrant requirement when they entered the home. In addition, it appears to the court that defendant officers' search was reasonable and limited to the purpose of finding Kaur and verifying her safety. While plaintiffs claim that there was a "full scale search," they have not presented any evidence to support this conclusion. Rather,

the evidence supports the contention that the degree of
intrusion of the search was limited only to places in the house
where a body could have been located and not a "full scale
search." Further, the Sheriff Deputies testified that they
entered the home through an open door in the rear of the home
and repeatedly identified and announced themselves upon entry.
Again, plaintiffs were not present when the entry occurred and
are therefore unable to dispute this testimony. As already
noted, the court holds that the Sheriff Deputies were
objectively reasonable in concluding that there was an
emergency, and the Sheriff Deputies testify that their
motivation for entering the home was to ascertain and protect
the well-being of Kaur. There was no damage to property
reported, no seizures, and no arrests made. Therefore, in light
of the emergency circumstances surrounding the entry, it cannot
be shown that defendant officers' conduct amounted to anything
near what would be highly offensive to a reasonable person.
Thus, defendant officers' motion for summary judgment as to
plaintiffs' invasion of privacy claim is granted.

   **D.   Intentional Infliction of Emotional Distress.**

   Plaintiffs allege that the defendant officers' entry into
their home constitutes the tort of intentional infliction of
emotional distress. To succeed on this claim, plaintiffs must
prove: "(1) extreme and outrageous conduct by the defendant with
the intention of causing, or reckless disregard of the
probability of causing, emotional distress; (2) the plaintiff's

suffering severe or extreme emotional distress; and (3) actual
and proximate causation of the emotional distress by the
defendant's outrageous conduct." (Internal quotations omitted)
<u>Christensen v. Super. Ct.</u>, 54 Cal. 3d 868, 903 (1991).
Furthermore, to prove that a defendant's conduct is
"outrageous[, it] must be so extreme as to exceed all bounds of
that usually tolerated in a civilized community." <u>Id.</u> at 903.

    In this case, as with their claim for invasion of privacy,
plaintiffs base their intentional infliction of emotional
distress claim on the Sheriff Deputies' entry into their home
without a warrant. Moreover, plaintiffs essentially predicate
their allegations of outrageousness on the Sheriff Deputies'
lack of warrant. As described above, Sheriff Deputies possessed
a valid emergency exception to the warrant requirement. It was
objectively reasonable for the Sheriff Deputies to believe there
was an emergency. Pursuant to that emergency, Sheriff Deputies
entered the home to confirm Kaur's safety and render aid if
necessary. Further, the Sheriff Deputies entered the home
through an open door and repeatedly announced and identified
themselves upon entry. In addition, there is no evidence to show
that the scope of the search conducted was anything other than
reasonable and limited to the purpose of the entry: to verify
Kaur's safety. Furthermore, plaintiffs were not present when
this search took place, and defendant officers' undisputed
testimony states that their conduct was not directed at
plaintiffs, but rather at protecting Kaur. The Sheriff Deputies'

1    conduct simply does not rise to a level so extreme as to exceed

2    all bounds of that usually tolerated in a civilized community.

3    Therefore, the Sheriff Deputies' motion for summary judgment as

4    to plaintiffs' intentional infliction of emotional distress

5    claim is granted.

**IV. CONCLUSION**

7        For the foregoing reasons, the court ORDERS as follows:

8    (1)   Plaintiffs' motions for summary judgment, ECF Nos. 44,

9          66, are DENIED.

10   (2)   The Sheriff Deputy defendants' motion for summary

11         judgment, ECF No. 58, is GRANTED.

12   (3)   The court notes that claims of aiding and abetting the

13         Sheriff Deputy defendants' violations of Section 1983

14         and state law remain against non-moving defendants

15         Bains and Kaur.  It appears to the court that because

16         it enters judgment for the Sheriff Deputies as to the

17         claims Bains and Kaur allegedly aided and abetted,

18         that Bains and Kaur are also entitled to judgment.

19         For this reason, the court orders plaintiffs to show

20         cause as to why judgment should not be entered as to

21         Bains and Kaur within fourteen (14) days of the

22         issuance of this order.

23       IT IS SO ORDERED.

24       DATED:  August 12, 2010.

25                                    LAWRENCE K. KARLTON
                                      SENIOR JUDGE
26                                    UNITED STATES DISTRICT COURT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26